**CALIFORNIA PHARMACISTS
ASSOCIATION, et al.,
Plaintiffs,**

v.

**David Maxwell JOLLY, Defendant.**

**Case No. CV 09–722 CAS (MANx).**

United States District Court,
C.D. California,
Western Division.

March 9, 2009.

*See e.g., Rodde v. Bonta,* 357 F.3d 988, 999 (9th Cir.2004).

Byron J. Gross, Hooper Lundy & Bookman Inc., Los Angeles, CA, Craig J. Cannizzo, Hooper Lundy and Bookman Inc., San Francisco, CA, Felicia Y. Sze, Jordan Brian Keville, Lloyd A. Bookman, Michael A. Dubin, Hooper Lundy and Bookman Inc., Los Angeles, CA, for Plaintiffs.

Gregory Martin Cribbs, Randall R. Murphy, Office of Attorney General of California, Los Angeles, CA, Shannon M. Chambers, Office of the Attorney General, Sacramento, CA, for Defendant.

## ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AS TO HOSPITALS

CHRISTINA A. SNYDER, District Judge.

### I. INTRODUCTION AND BACKGROUND

On September 16, 2008, the California Legislature passed Assembly Bill 1183 ("AB 1183"), which was subsequently signed by the Governor and filed with the Secretary of State on September 30, 2008. AB 1183, *inter alia,* amends Cal. Welf. & Inst.Code. § 14105.191 and § 14166.245, mandating that, effective March 1, 2009, Medi–Cal reimbursement payments to some fee-for-service providers will be reduced by one percent, five percent, or ten percent, depending on provider type.

These reductions mandated in AB 1183 replace the ten percent rate reduction put into place by Assembly Bill X3 5 ("AB 5"), which terminated on February 28, 2009. *See* Cal. Welf. & Inst.Code § 14105.19(b)(1). AB 5 was passed by the California Legislature on February 16, 2008. On August 18, 2008, the ten percent rate reduction mandated by AB 5 was partially enjoined by this Court in a related action, *Independent Living Center of Southern California, Inc. v. Sandra Shewry,* CV–08–3315–CAS. In issuing the preliminary injunction, this Court found that petitioners had, *inter alia,* demonstrated a strong likelihood of success in showing that AB 5 was preempted by § 30(A) of the Medicaid Act (referred to herein as "§ 30(A)"). The Court enjoined the rate reduction as to physicians, dentists, pharmacies, adult day health care centers ("ADHCs"), and clinics. However, the Court did not enjoin the rate reduction as to non-contract hospitals, finding that plaintiffs had not presented sufficient evidence of irreparable harm to those providers. The Court's August 18, 2008 order is currently being appealed to the Court of Appeals for the Ninth Circuit.[1]

---

1. The Court's August 18, 2008 order was is-    sued on remand from the Ninth Circuit, after

On January 29, 2009, plaintiffs California Pharmacists Association; California Medical Association; California Dental Association; California Hospital Association; California Association for Adult Day Services; Marin Apothecary, Inc.; South Sacramento Pharmacy; Farmacia Remedios, Inc.; Acacia Adult Day Services; Sharp Memorial Hospital; Grossmont Hospital Corporation; Sharp Chula Vista Medical Center; Sharp Coronado Hospital and Healthcare Center; Fey Garcia; and Charles Gallagher filed the instant action against David Maxwell–Jolly, Director of the Department of Health Care Services of the State of California. Plaintiffs' complaint challenges the AB 1183 Medi–Cal reimbursement rate reductions to various providers.

On February 11, 2009, plaintiffs filed the instant motion for a preliminary injunction. Plaintiffs seek an order for a preliminary injunction restraining and enjoining the defendant from reducing Medi–Cal fee-for-service rates to hospitals pursuant to Assembly Bill 1183. Defendant filed an opposition thereto on February 26, 2009. A reply was filed on March 4, 2009. After carefully considering the arguments set forth by the parties, the Court finds and concludes as follows.

## II. HOSPITAL REIMBURSEMENT BEFORE AND AFTER AB 1183

In their motion, plaintiffs distinguish between four distinct types of hospital services, for which Medi–Cal reimbursement rates are determined in different ways: (1) inpatient services, (2) outpatient services, (3) Distinct Part Nursing Facilities ("DP/NF's"), and (4) subacute services.

The reimbursement rates for inpatient services at issue in this motion are those provided to a specific type of hospital, known as a "non-contract hospitals." In 1982, the California Legislature authorized the Department to enter into contracts with certain hospitals for inpatient services, under the selective provider contracting program ("SPCP"). Mot at 3; *See* Cal. Welf Inst.Code §§ 14081 *et seq.* Hospitals with SPCP contracts are referred to as "contract hospitals" and are generally reimbursed for MediCal at per diem rates, which are negotiated by the California Medical Assistance Commission ("CMAC"). Mot. at 3; Opp'n at 7; Chell Decl. ¶¶ 3, 5. Reimbursement rates to contract hospitals are not affected by AB 1183. By contrast, non-contract hospitals operating outside of a geographic area where a contract hospital exists are reimbursed for inpatient services to Medi–Cal patients, at a rate equaling the lowest of (1) its customary charge, (2) its reasonable costs determined using Medicare principles, (3) an all-inclusive rate per discharge determined by computing a base year cost per discharge and then limiting annually increases to the base rate, or (4) the 60th percentile rate per discharge of the hospitals in its "peer group."[23] Mot. at 3; Opp'n at 8.

plaintiffs appealed this Court's original June 25, 2008 ruling on their preliminary injunction motion. The Court's June 25, 2008 order found that plaintiffs in *Independent Living* lacked any federal rights under § 30(A), and therefore had denied petitioners' motion for preliminary injunction. On appeal, the Ninth Circuit held that plaintiffs could bring suit under the Supremacy Clause to enjoin AB 5 as preempted under the Medicaid Act, and remanded to this Court. *See Independent Living Center of Southern California et. al. v. Sandra Shewry et al.*, 543 F.3d 1050 (9th Cir.2008).

**2.** By contrast, where non-contract hospitals are located in the same geographic area (known as a Health Facility Planning Area) where contract hospitals are providing adequate services to the area's populations, the hospitals not covered by a contract will be reimbursed only in emergency situations.

**3.** Defendant note that non-contract hospitals may also receive supplemental MediCal reimbursements under programs such as the disproportionate share hospital (DSH) program, the Safety Net Care Pool (SNCP) program, and the Health Care Coverage Initiative

For outpatient services as opposed to inpatient services, hospitals are reimbursed at established rates set by the Department. Mot. at 4; 22 CCR § 51509. For DP/NF's, Medi–Cal reimbursement is determined by a prospectively established per diem reimbursement rate for daily services, which is the lesser of a facility's projected costs or a prospectively determined median per diem rate. Mot. at 4; 22 CCR § 51511(a)(2). For subacute services, facilities are reimbursed per diem at a rate equal to the lesser of the facility's per day costs as projected by the Department or the class median per diem rate established by the Department. Mot. at 5; 22 CCR § 51511.5(a)(1).

For inpatient services at non-contract hospitals, AB 1183 amends Cal. Welf. & Inst.Code § 14166.245 to retain AB 5's ten percent reduction to both interim and final payment rates, and to mandate that such reimbursement be limited to "the applicable regional per diem contract rate for tertiary hospitals and for all other hospitals ... Reduced by 5%, multiplied by the number of Medi–Cal covered inpatient days ... ["the CMAC limit"]" Cal. Welf. & Inst.Code 14166.245(b)(2)(A), (c)(3)(B).[4] For DP/NF and subacute services, AB 1183 mandates a five percent reduction (from pre-AB 5 rates) in reimbursement rates. Cal. Welf. & Inst.Code § 14105.191. AB 1183 also mandates a one percent reimbursement rate reduction (from pre-AB 5 rates) for outpatient services. Cal. Welf. & Inst.Code § 14105.191.

### III.  LEGAL STANDARD

■■■ A preliminary injunction is appropriate when the moving party shows either (1) a combination of probable success on the merits and the possibility of

irreparable harm, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in the moving party's favor. *See Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987). These are not two distinct tests, but rather "the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Id.* A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On–Line, Inc. v. Phoenix Software, Inc.,* 739 F.2d 1415, 1421 (9th Cir.1984).

### IV.  DISCUSSION

### A.  LIKELIHOOD OF SUCCESS ON THE MERITS

■■■ Pursuant to the holding of the Ninth Circuit in the related action *Independent Living,* 543 F.3d at 1065, the Court finds, as an initial matter, that plaintiffs may pursue a claim for relief under the Supremacy Clause based on the allegation that AB 1183 is preempted by § 30(A). Here, plaintiffs' Supremacy Clause claim is predicated upon federal conflict preemption. Under general principles of federal preemption, state law is preempted only to the extent that it actually conflicts with federal law. *Pacific Gas & Elec. Co. v. State Energy Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Such a conflict may arise either where "compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 203–04, 103 S.Ct. 1713 (citations omitted).

---

(HCCI) program. Opp'n at 8; Amended Department Inpatient Analysis at 12.

**4.** Certain hospitals, including small and rural hospitals, are exempt.

Thus, to prevail on the merits plaintiffs will have to prove either that it is not possible for the Department to comply with both AB 1183 and the Medicaid Act or that AB 1183 stands as an obstacle to the enforcement of § 30(A). As such, the Court turns to the statutory provisions at issue here.

The "quality of care" provision of § (30)(A) provides that:

[a] State plan for medical assistance must ... provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan ... as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care.

42 U.S.C. § 1396a(30)(A). The "equal access" provision of § 30(A) provides that:

[a] State plan for medical assistance must ... provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan ... as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are ... sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

*Id.*

In *Orthopaedic Hospital v. Kizer*, 1992 WL 345652 (C.D.Cal.1992) ("*Orthopaedic I*"), plaintiff-hospital providers filed suit pursuant to 42 U.S.C. § 1983 ("§ 1983"), claiming that the Director violated § 30(A) by setting reimbursement rates for hospital outpatient services without considering

the effect of hospital costs on efficiency, economy, and quality of care.[5] *Id.* at *1. The district court concluded that § 30(A) was enforceable in a § 1983 action, and that the Department "had a judicially enforceable obligation" to consider and make findings each time it modified reimbursement rates. *Id.* at *2. According to the district court, § 30(A) obligated the Department to consider efficiency, economy, and quality of care, which it referred to as the "relevant factors." *Id.* at *4. The district court found that the Director had acted arbitrarily and capriciously in establishing six of the seven challenged rates. *Id.* The court then remanded the matter to the Department for further consideration. *Id.* at *14. Upon remand, the Department conducted a rate study, and readopted the reimbursement rates without change. *Orthopaedic Hospital II/III v. Belshe*, 103 F.3d 1491, 1495 (9th Cir.1997).

The hospitals returned to the district court, filing two lawsuits (*Orthopaedic II/III*) that the district court consolidated, arguing that the adopted rates did not comply with § 30(A). *Id.* The district court entered judgment in favor of the Department, finding that the Department was not statutorily required to consider hospital costs when setting reimbursement rates. *Id.* The hospitals appealed, and the Ninth Circuit reversed. The Ninth Circuit's interpretation held that § 30(A) "provides that payments for services must be consistent with efficiency, economy, and quality of care, and that those *payments* must be sufficient to enlist enough providers to provide access to Medicaid recipients." *Id.* at 1496 (emphasis in original). The Ninth Circuit therefore concluded that under § 30(A)

---

**5.** The hospitals did not, however, challenge the rates under the "equal access" provision.

*Orthopaedic I,* 1992 WL 345652 at *14 n. 4.

the Director must set hospital outpatient reimbursement rates that bear a reasonable relationship to efficient and economical hospitals' costs of providing quality services, unless the Department shows some justification for rates that substantially deviate from such costs. To do this, the Department must rely on responsible cost studies, its own or others', that provide reliable data as a basis for its rate setting.

*Id.*[6] Further, the Ninth Circuit found that "[i]t is not justifiable for the Department to reimburse providers substantially less than their costs for purely budgetary reasons." *Id.* at 1499 n. 3.[7]

Whatever else its effect may have been, it is clear that *Sanchez v. Johnson,* 416 F.3d 1051 (9th Cir.2005) left undisturbed the rule announced in *Orthopaedic II/III* that § 30(A) creates duties on behalf of the Department, i.e., the duty to consider efficiency, economy, and quality of care when establishing reimbursement rates. Indeed, the *Sanchez* court recognized that "[§ 30(A)] speaks ... of the *State's obligation* to develop 'methods and procedures' for providing services generally." *Sanchez,* 416 F.3d at 1059 (emphasis added).

■ Because *Orthopaedic II/III* is binding authority on this Court, the Court finds that when the State of California seeks to modify reimbursement rates for health care services provided under the Medi–Cal program, it must consider efficiency, economy, and quality of care, as well as the effect of providers' costs on those relevant statutory factors.

■ In the instant motion for preliminary injunction, plaintiffs argue that AB 1183's rate reductions to hospitals is preempted by § 30(A), because the Legislature did not consider any of the relevant factors as required by *Orthopaedic II/III.* Specifically, plaintiffs argue that the legislative history indicates that "the California Legislature did not undertake studies of hospital costs prior to enacting AB 1183, or give any consideration to whether the payment rates which would be in effect under the application of the AB 1183 Hospital Rate Cuts would be reasonably related to hospital costs." Mot. at 13. Furthermore, plaintiffs argue that the language of AB 1183 itself indicates that it was passed purely for budgetary reasons. For example, Cal. Welf. & Ins. Code § 14166.245, the provision implementing reductions to inpatient hospital services, states

> The Legislature finds and declares that the state faces a fiscal crisis that requires unprecedented measures to be taken to reduce General Fund expenditures to avoid reducing vital government

---

6. *See e.g., Alaska Dep't of Health & Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs.,* 424 F.3d 931, 940–41 (9th Cir.2005); *see also Arkansas Med. Soc'y v. Reynolds,* 6 F.3d 519, 530 (8th Cir.1993) ("We agree with the trial court's conclusion that the relevant factors that DHS is obliged to consider in its rate-making decisions are the factors outlined in 42 U.S.C. § 1396a(a)(30)(A)."); *cf. Methodist Hosps. v. Sullivan,* 91 F.3d 1026, 1030 (7th Cir.1996) (finding that § 30(A) does not require a state to consider any particular factors, but rather, requires that the state arrive at substantive results consistent with the Medicaid Act); *Rite Aid, Inc. v. Houstoun,* 171 F.3d 842 (3d Cir.1999) (same).

7. Subsequently, in *Sanchez v. Johnson,* 416 F.3d 1051 (9th Cir.2005), the Ninth Circuit held that § 30(A) does not confer individual rights that are enforceable under 42 U.S.C. § 1983. *Id.* at 1060. However, in *Independent Living,* 543 F.3d 1050 (9th Cir.2008), the Ninth Circuit held that "a plaintiff seeking injunctive relief under the Supremacy Clause on the basis of federal preemption need not assert a federally created 'right,' in the sense that term has been recently used in suits brought under § 1983, but need only satisfy traditional standing requirements." *Independent Living,* 543 F.3d 1050, 1058 (9th Cir. 2008).

services necessary for the protection of the health, safety, and welfare of the citizens of the State of California.

Defendants, however, argue that the requirements of *Orthopaedic II/III* are in fact satisfied, because the Department itself performed a detailed analysis of the relevant factors. Specifically, defendant argues that beginning in October 2008 and continuing into February 2009, the Department conducted formal written analyses of reimbursement under AB 1183 for non-contract hospital inpatient services, DP/NF, and subacute services, which are contained in the reports entitled "[Amended] Analysis of the Impact of Welfare and Institutions Code Section 14166.245 Concerning Medi–Cal Reimbursement for Non–Contract Hospital Inpatient Services" ("Amended Department Inpatient Analysis") and "Analysis of Assembly Bill 1183 Medi–Cal Reimbursement For Various Nursing Facility Services" ("Department Nursing Analysis").

■ Plaintiffs, however, argue that the Department's post-hoc analysis does not satisfy the requirements of *Orthopaedic II/III.* The Court agrees. First, the Court notes that AB 1183, as passed by the Legislature, does not provide the Department with any discretion to determine whether the five percent rate reduction should be implemented based on the Department's consideration of the relevant factors. *See* Cal. Welf. & Inst.Code. § 14105.191 ("Notwithstanding any other provision of law, or order to implement changes in the level of funding for health care services, the *director shall reduce*

provider payments, as specified in this section ...") (emphasis added). In *Orthopaedic II/III,* in which rates set by the Department, rather than the Legislature, were at issue, the court stated that the "the Department must rely on responsible cost studies, its own or others', that provide reliable data *as a basis* for its rate setting." 103 F.3d at 1496 (emphasis added); *see also id.* at 1499–1500 ("Since the Department did not adequately consider hospitals' costs *when readopting its rates,* the Department's actions were arbitrary and capricious and contrary to law") (emphasis added). The *Orthopaedic II/III* holding therefore indicates that the body responsible for rate setting must consider the relevant factors contemporaneously with the adoption of the rates. Because the Department has no authority to alter the rate reduction imposed by the Legislature, the Department's post hoc analysis does not satisfy the requirements of *Orthopaedic II/III.*

Furthermore, in this case, it does not appear that the Legislature appropriately considered any of the relevant factors before passing AB 1183.[8] Defendant responds to plaintiffs' arguments that the Legislature did not perform the required analysis by submitting evidence indicating that (1) between May 2008 and September 2008, Department employees provided information to legislative staff members concerning the rate reductions; (2) in June 2008, the Subcommittee 3 Health Human Services, Labor, and Veterans Affairs Major Action Report included modifications

---

8. Defendant argues that "the Legislature followed the advice of the Legislative Analyst Office's (LAO) report concerning the 2008–2009 Budget ... While the LAO expressed concerns about reductions for physician services, the LAO stated that 'Hospitals and some other providers have received recent rate increases. In contrast to physicians, Medi–Cal adjusts on an annual basis the reim-

bursement rates for certain other providers.' " Opp'n at 1. While defendant is correct that the LAO report discussed the possible rate reduction for hospital services, and ultimately concluded that such reductions were advisable, defendant presents no evidence to indicate that the Legislature actually reviewed or considered the LAO's report in passing AB 1183.

and rejections of certain rate reductions proposed by the Administration; and (3) in July 2008, the Summary Overview Budget Conference Committee Report includes discussions of the rate reductions. *See* Trueworthy Decl. ¶ 5, Exs. A–E. However, none of this evidence demonstrates that the Legislature relied on responsible cost studies providing reliable data in setting the rates. *See Orthopaedic Hospital II/ III,* 103 F.3d at 1496.

Therefore, because it appears that the Legislature and the Department did not properly consider the relevant factors prior to passing the rate reductions in AB 1183, the Court finds that plaintiffs have a strong likelihood of success on the merits.[9]

## B.  IRREPARABLE HARM

■ The next question before this Court is whether plaintiffs have shown that MediCal beneficiaries will be irreparably harmed if the rate reduction to hospitals is permitted to go into effect. First, plaintiffs argue that the rates under AB 1183 are not reasonably related to provider costs. Mot. at 11. With regard to inpatient services, plaintiffs' submit an analysis of the effect of the AB 1183 ten percent rate reduction, which finds that, under AB 1183, no non-contract hospital will receive more than 90 percent of costs for inpatient services, while one-third of the hospitals will receive less than 55 percent of their costs for inpatient services. Mot. at 11; Zaretsky Decl. Ex. D (Comparison of Medi–Cal Percentages of Costs Paid Under 2009 Payment Limit and Under Prior, Cost Reimbursement, System); Ex E (Frequency Distribution of the Medi-Cal Percentages of Cost Paid Under the

2008 Reimbursement Limit and Under the Cost Reimbursement System). By contrast, plaintiffs argue, prior to AB 5 and AB 1183, 87 of the 95 affected hospitals were reimbursed between 95 and 100 percent of their costs for inpatient services. *Id.* Furthermore, plaintiffs argue, the CMAC limit imposed by AB 1183 does not take into account variations among hospitals in their costs in setting reimbursement, and, therefore, the reimbursement rates do not take reflect the costs of the individual hospital. Mot. at 12–13.

With regard to DP/NF services, which are reimbursed based on the lower of the projected costs or a statewide "median" cost per diem, and are subject to a five percent rate reduction under AB 1183, plaintiffs argue that the median cost per diem excludes certain DP/NF's with high costs, and that, as a result, the median is artificially deflated. Plaintiffs argue that while before AB 5 and AB 1183, 84 percent of costs of DP/NF services were reimbursed, under AB 1183, only 79 percent of costs will be reimbursed, and many facilities will receive less than half of their costs. Mot. at 14; Zaretsky Decl. ¶ 23.

With regard to subacute services, which are also subject to a five percent rate reduction under AB 1183, plaintiffs argue that the percentage of reimbursed costs will decrease from 98 percent (before AB 5 and AB 1183) to 93 percent of costs for non-ventilator service providers, and from 95 percent (before AB 5 and AB 1183) to 91 percent of costs for ventilator services providers. Zaretsky Decl. ¶ 25.

**9.** Plaintiffs also argue that (1) AB 1183 is preempted by § 13(A) of the Medicaid Act, because the State failed to comply with that provision's notice-and-comment requirements, and (2) AB 1183 violates 42 C.F.R. §§ 430.12, 447.252, 447.256(a)(I) because it was implemented without approval from the

Federal government. Because the Court finds herein that plaintiffs have established a strong likelihood of success in demonstrating that the AB 1183 rate reductions for hospitals are preempted by § 30(A), the Court need not reach these issues.

With regard to hospital outpatient services, which are subject to a one percent rate reduction under AB 1183, plaintiffs argue that reimbursement for costs will decrease from 43 percent of costs (before AB 5 and AB 1183) to 41 percent of costs. Mot. at 14; Zaretsky Decl. ¶ 21.

Plaintiffs next argue that these rate reductions will cause irreparable harm, in the form of reduced hospital services to Medi–Cal beneficiaries. Plaintiffs argue first that many hospitals have already eliminated services due to the AB 5 rate cuts, which has in turn impacted the availability of medical services in certain communities. Duaner Decl. ¶ 8; Jordan Decl. ¶ 6; Miller ¶ 4; DeNio ¶ 4. Plaintiffs argue that AB 1183 will render inevitable further reductions and elimination of some hospital services. McKague Decl. ¶ 6; Delmore Decl. ¶ 6; Riccioni ¶¶ 4–5. For example, plaintiffs argue that the rate cuts will likely result in the forced closure of (1) the emergency department at Central Valley General Hospital in Hanford, CA; (2) skilled nursing and subacute units at Sharp Coronado Hospital and Healthcare Center; and (3) the Diabetes Education Center and Children's Speciality Clinic at El Centro Regional Medical Center in El Centro California (forcing patients to travel two hours to San Diego to obtain these services).[10] Mot. at 21–22; McKague Decl. ¶ 6; Hall Decl. ¶¶ 5–7; Farmer Decl. ¶¶ 7–8.

Defendant, however, argues that the showing of harm by plaintiffs is too speculative. With regard to inpatient services, defendant argues that the Amended Department Inpatient Analysis determined that Medi–Cal reimbursement for noncontract hospital inpatient services will compensate approximately 91 percent of hospitals' audited costs under AB 1183; if small and rural hospitals, which are exempt from the rate reduction, are excluded from the analysis, 86 percent of hospitals' audited costs will continue to be reimbursed under AB 1183. Opp'n at 9; Amended Department Inpatient Analysis at 13. With regard to DP/NF and subacute services, defendant argues that under AB 1183, DP/NF and subacute providers will be reimbursed within a "range of reasonableness" (i.e. 85–95 percent of costs), and that the Department Nursing Analysis indicates that there will be sufficient access to these services.[11] Opp'n at 10–11; Yien Decl. ¶ 4, 8. In addition, defendant notes that the transition from AB 5 to AB 1183 will in fact increase by 5.5 percent the reimbursement for these types of services. Opp'n at 11; Yien Decl. ¶¶ 2–18. Similarly, with regard to outpatient services, defendant notes that under AB 5 there was a ten percent rate reduction in effect, which is decreased to one percent under AB 1183. Opp'n at 11.

Defendants also argue that plaintiffs' evidence does not take into account the fact that Medi–Cal pays substantial supplemen-

---

**10.** Plaintiffs also argue that hospitals will suffer pecuniary harm, and that such harm is irreparable because retroactive monetary claims are barred by the Eleventh Amendment in this action. Mot. at 22, citing *Kansas Health Care Assoc. v. Kansas Dept. Of Social and Rehabilitation Svcs.*, 31 F.3d 1536, 1543 (10th Cir.1994) (harm from inadequate Medicaid reimbursement rates would be irreparable because Eleventh Amendment bars retrospective monetary relief). However, the Court notes that in that case, the Court held

"the Eleventh Amendment bar simply indicates irreparability, but does not, in itself, establish harm." *See id.*

**11.** Plaintiffs argue that the disparity between plaintiffs' cost estimate (reimbursement at 79 percent of costs) and defendant's cost estimate is that defendant included in the analysis supplemental payments, which were only received by 13 of the 78 hospitals included in the analysis. Reply at 15–16.

tal reimbursement to many non-contract hospitals, which is not affected by AB 1183. Opp'n at 14; Liu Decl. ¶ 18. In fact, defendant argues that several of the hospitals submitting declarations in support of the preliminary injunction receive substantial additional reimbursement under one of the supplemental reimbursement programs not impacted by AB 1183, and that, additionally, many of the hospitals submitting declarations are making large profits.[12] Hutchinson Decl. ¶¶ 1–18 (describing various supplemental reimbursement programs paying extra money to hospitals including some submitting declarations); Ong Decl. ¶ 17 (14 of 19 hospitals submitting declarations were profitable in fiscal year ending in 2007, having a collective net income of $181.3 million; five hospitals operating at a loss, with a collective net loss of $29.2 million). Furthermore, defendant notes that reimbursement for hospital outpatient services has significantly increased between 2001 to 2004 to 43 percent above the levels in effect three years earlier. Opp'n at 12; Machado Decl. ¶ 9.

The Court agrees with defendant that plaintiffs have failed to show that AB 1183 rate reductions to hospitals will result in irreparable harm so as to warrant the issuance of an injunction. First, the Court notes that the Legislative Analyst Office's Report on the 2008–09 budget specifically recommended that the Legislature accept the Governor's proposal to reduce Medi-Cal reimbursement rates to hospitals, and indeed suggested that the Legislature increase the proposed reductions for hospitals. Legislative Analyst's Office Report, 2008–09 Analysis ("LAO Report") at C–39. The LAO report concluded ("[w]e recommend the Legislature reject the Governor's proposal to reduce payments for all providers except hospitals … Our review indicates that hospitals have received significant rate increases relative to other provider types in recent years, and hospitals are generally among the most expensive settings to provide care"). LAO Report at C–39.

More importantly, there is evidence showing that approximately 90 percent of hospital inpatient services are provided by contract hospitals that are not subject to the AB 1183 rate reductions, and that such hospitals are contractually obligated to provide inpatients services to all Medi-Cal beneficiaries for whom such services are medically necessary and covered by Medi-Cal. *See* Amended Department Inpatient Analysis at 14. Moreover, there is evidence that there are 87 Federally Qualified Health Centers ("FQHC's") and 284 Rural Health Clinics ("RHC's") throughout California that provide outpatient services, which are not subject to the AB 1183 rate reduction. Opp'n at 12; Shine Decl. ¶ 4. Therefore, although there may be certain limited exceptions, it appears unlikely that Medi-Cal beneficiaries will go without access to needed inpatient and outpatient services under the AB 1183 rate reductions. Furthermore, defendant has submitted evidence demonstrating that many of the hospitals submitting declarations were profitable in the fiscal year ending in 2007, indicating that these facilities are likely capable of continuing to provide services even with the rate reductions in effect. Ong Decl. ¶ 17. Based on the present record, this evidence presented is too speculative to support a finding of irreparable harm.[13]

---

12. Plaintiffs, however, respond that many of the supplemental reimbursement programs provide funding for services to non-MediCal patients. Reply at 13.

13. Because the Court finds herein that plaintiffs have failed to show irreparable harm, the Court determines that, regardless of the Court's findings regarding the balance of hardships and the public interest, a preliminary injunction is not warranted.

## V. CONCLUSION

For the foregoing reasons, the Court DENIES plaintiffs' motion for preliminary injunction with regard to AB 1183's reimbursement rate reduction to hospitals, without prejudice to its being renewed after the Ninth Circuit rules on the appeal in *Independent Living Center of Southern California, Inc. v. Sandra Shewry*, CV–08–3315–CAS.

IT IS SO ORDERED